IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| AMBER SCHNEIDER, individually and on behalf of all similarly-situated current citizens of Illinois and the United States,<br><br>                  Plaintiffs,<br><br>   v.<br><br>MOTT'S LLP,<br><br>                  Defendant. | No. 3:21-CV-01251-NJR<br><br>Chief Judge Nancy J. Rosenstengel |

**DEFENDANT MOTT'S LLP'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND .......................................................................... 2

      A.    Mott's Applesauce Labels State Their Ingredients and Identify the
            Presence of Real Fruit as One of Those Ingredients. ............................... 2

      B.    Plaintiff Alleges She Was Misled by the "Made From 100% Real Fruit"
            Statement Despite Other Information Contained on the Products' Labels. ............ 5

III.  ARGUMENT .................................................................................................. 6

      A.    Plaintiff's Claims Fail Under the Reasonable Consumer Standard. ...................... 7

            1.    Mott's Applesauce labels do not deceive a "reasonable consumer"
                  into believing that "Made From 100% Real Fruit" means "Made
                  From [Only] 100% Real Fruit." ............................................... 8

            2.    Reasonable consumers understand, based on dictionary definitions
                  and FDA regulations, that applesauce may contain more than one
                  ingredient. ............................................................... 10

            3.    The claim "Made With 100% Real Fruit" is truthful and
                  unambiguous. ............................................................. 12

      B.    Plaintiff's Unjust Enrichment and Breach of Warranty Claims Necessarily
            Fail Along With the ICFA Claim. .................................................. 14

      C.    Plaintiff Lacks Standing to Seek Injunctive Relief. ............................... 15

IV.   CONCLUSION ............................................................................................. 15

CERTIFICATE OF SERVICE ................................................................................ 17

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Becerra v. Dr Pepper/ Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ....................................................................10, 11

*Bell v. Publix Super Markets, Inc.*,
    982 F.3d 468 (7th Cir. 2020) .......................................................................... passim

*Benson v. Fannie May Confections Brands, Inc.*,
    944 F.3d 639 (7th Cir. 2019) ....................................................................14

*Bober v. Glaxo Wellcome PLC*,
    246 F.3d 934 (7th Cir. 2001) ......................................................................7

*Bruton v. Gerber Prods.*,
    703 Fed. Appx. 468 (9th Cir. Jul. 17, 2017) ..............................................9

*Bruton v. Gerber Prods.*,
    961 F.Supp.2d 1062 (N.D. Cal. 2013) .......................................................9

*Burton v. Hodgson Mill, Inc.*,
    2017 WL 1282882 (S.D. Ill. Apr. 6, 2017)...............................................15

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ......................................................................7

*Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*,
    137 Ill. App. 3d 84 90-91 (1985) .............................................................14

*Chuang v. Dr Pepper Snapple Group, Inc.*,
    2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ......................................8, 9

*Freeman v. MAM USA Corp.*,
    — F.Supp.3d —, 2021 WL 1103350 (N.D. Ill. Mar. 23, 2021) ...............7

*Galanis v. Starbucks Corp.*,
    2016 WL 6037962 (N.D. Ill. Oct. 14, 2016)..........................................7, 10

*Henderson v. Gruma Corp.*,
    2011 WL 1262188 (C.D. Cal. Apr. 11, 2011) ...........................................8

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 757 ..........................................................................10, 11, 12

*Ivie v. Kraft Foods Glob., Inc.*,
    2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ........................................................11

*Kennedy v. Mondelez Glob. LLC*,
    2020 WL 4006197 (E.D.N.Y. July 10, 2020) .......................................................8

*Killeen v. McDonald's Corp.*,
    317 F. Supp. 3d 1012 (N.D. Ill. 2018) ................................................................7

*Moore v. Trader Joe's Co.*,
    4 F. 4th 874 (9th Cir. 2021) ................................................................9, 11, 12, 14

*Reyes v. Crystal Farms Refrig. Distrib. Co.*,
    2019 WL 3409883 (E.D.N.Y. Jul. 26, 2019) ...........................................8, 10, 11, 12

*Rivas v. Hershey Co.*,
    2020 WL 4287272 (E.D.N.Y. Jul. 27, 2020) ......................................................11

*Sarr v. BEF Foods, Inc.*,
    2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) .........................................................8

*Scherr v. Marriott Int'l, Inc.*,
    703 F.3d 1069 (7th Cir. 2013) ...........................................................................15

*Song v. Champion Pet Foods*,
    2020 WL 7624861 (D. Minn. Dec. 22, 2020) ...................................................8, 10

*Spector v. Mondelez Int'l, Inc.*,
    178 F. Supp. 3d 657 (N.D. Ill. Mar. 31, 2016) ..................................................15

*Spector v. Mondelez Int'l, Inc.*,
    2017 WL 4283711 (N.D. Ill. Sept. 27, 2017) ...............................................10, 11

*Vanlaningham v. Campbell Soup Co.*,
    492 F. Supp. 3d 803 (N.D. Ill. 2020) (Rosenstengel, J.).......................................7

*Vanzant v. Hill's Pet Nutrition, Inc.*,
    934 F.3d 730 (7th Cir. 2019) ..............................................................................14

*Washington v. Hyatt Hotels Corp.*,
    2020 WL 3058118 (N.D. Ill. Jun. 9, 2020)...........................................................7

*Weaver v. Champion Petfoods USA, Inc.*,
    3 F.4th 927 (7th Cir. 2021) ........................................................................8, 9, 13

### STATUTES

21 U.S.C. § 341 ...............................................................................................3, 12

154466379.4

Illinois Consumer Fraud and Deceptive Practices Act .......................................................... passim

**RULES**

Rule 12 ........................................................................................................8, 12, 13, 14

**REGULATIONS**

21 C.F.R § 101.54(c)..............................................................................................2, 3

21 C.F.R. § 145.110 ...................................................................................................3

21 C.F.R. § 145.110(a)(2)(v) ...............................................................................3, 12

21 C.F.R. § 145.110(a)(2)(viii)(b) ......................................................................3, 12

21 C.F.R.§ 155.194 ...................................................................................................3

21 C.F.R. § 163.130 ..................................................................................................3

42 Fed. Reg. 14412 (Mar. 15, 1977)........................................................................3

42 Fed. Reg. 14415 (Mar. 15, 1977)........................................................................3

**OTHER AUTHORITIES**

Cambridge Dictionary...........................................................................................4, 11

Cambridge Dictionary:
    https://dictionary.cambridge.org/us/dictionary/english/applesauce............................4

Dictionary.com: https://www.dictionary.com/browse/applesauce ................................4

Lexico: https://www.lexico.com/definition/apple_sauce...........................................4

Merriam-Webster: https://www.merriam-webster.com/dictionary/applesauce............................4

Oxford Dictionary ...............................................................................................4, 11

Oxford Dictionary:
    https://www.oxfordlearnersdictionaries.com/us/definition/american_english/a
    pplesauce...........................................................................................................4

154466379.4

# I. INTRODUCTION

Defendant Mott's LLP ("Mott's") manufactures and sells applesauce, a food that has been in the marketplace for decades and that consumers know well. Among the ingredients in Mott's applesauce is real fruit (apples) and so the products' labels truthfully state that they are "Made From 100% Real Fruit." To further emphasize the already plain meaning of this statement, additional language on the labels state Mott's applesauce is: "Made from real fruit which may contain seeds, stems, or other pieces of natural fruit."

Applesauce is also a food that is regularly sweetened, as reflected in multiple dictionaries that define it this way. And manufactured applesauce—the kind at issue in this case—sometimes also contains Vitamin C, which contributes to the product's health benefits. Indeed, since 1977 the United States Food and Drug Administration's ("FDA") standard of identity for "applesauce" has said that sweeteners and Vitamin C can be added to the defined category of foods labeled "applesauce." The Mott's applesauce products at issue here conform to these definitions. They are made predominantly from real fruit (apples), and also contain high fructose corn syrup (a sweetener), and Vitamin C. The products' labels state these facts and identify these ingredients.

Plaintiff Amber Schneider nonetheless claims she was misled into believing that that the "Made From 100% Real Fruit" statement on Mott's applesauce meant the product had no other ingredients except fruit. No "reasonable consumer" would interpret the products' labels this way. There are scores of cases that hold that when a product is labeled as having been made with or from a certain ingredient, a reasonable consumer knows that does not mean it is the *only* ingredient in the food. Moreover, reasonable consumer law requires that when evaluating a claim of deception, the court must consider the full label in context along with reasonable inferences a consumer can draw about the product itself. Here, the labels clearly refute Plaintiff's myopic interpretation, as they explain the meaning of the contested "Made From" statement and separately identify the presence of these non-fruit ingredients. Plaintiff's claim is likewise contradicted by a reasonable consumer's understanding that a commonplace food like applesauce—as multiple dictionaries and FDA regulations both confirm—is made from more than one ingredient and

typically sweetened. The Complaint fails under the "reasonable consumer" standard and should be dismissed in full.

Finally, the Complaint's request for the Court to "issue appropriate injunctive relief," Prayer for Relief ¶ c., should be dismissed because the Complaint does not allege any threatened future injury to the Plaintiff.

## II.     FACTUAL BACKGROUND

### A.     Mott's Applesauce Labels State Their Ingredients and Identify the Presence of Real Fruit as One of Those Ingredients.

Defendant Mott's LLP ("Mott's") manufactures, distributes and labels the products at issue in this lawsuit, which are several flavor varieties of applesauce: Applesauce; Applesauce Cinnamon; Applesauce Pear; Applesauce Tropical; Applesauce Strawberry; Applesauce Mixed Berry; and Applesauce Mango Peach (collectively "Applesauce" or "Products"). Complaint ¶ 1. The Applesauce is a shelf-stable product sold in grocery stores in different packaging formats, including both single-serving cups and a larger 48 oz. plastic jar. *See* Mott's Request for Judicial Notice ("RJN") Exs. A - I (attaching full copies of the labels of the Applesauce); *see also* Complaint ¶¶ 1, 13.

The primary ingredient in each variety of the Applesauce is apples. *See* RJN Exs. A-I. This is reflected by the fact that apples appear first in the ingredient listing on the labels of each of the Products. Some of the flavor varieties also contain other fruit, and this is listed on the Products' ingredient deck as well.[1] *Id.* Ex. E (Mott's Applesauce Strawberry variety listing "Strawberry Puree" as an ingredient in addition to "Apples"). Each Applesauce also contains Vitamin C, listed on the ingredient deck as "Ascorbic Acid (Vitamin C)." *Id.* Accordingly, the Applesauce labels also note that the food is a "Good Source of Vitamin C," an FDA-regulated claim that is permitted where, as is the case here, the food contains at least 10% of the daily value for that nutrient. 21

---

[1] Indeed, the Applesauce Cinnamon variety, by its name and label images, clearly communicates that it contains a non-fruit ingredient—cinnamon. *Id*. Exs. B & I (Mott's Applesauce Cinnamon label depicting images of cinnamon sticks.)

C.F.R § 101.54(c). Finally, the Applesauce at issue in this case is also sweetened, and the products' labels reflect that by listing high fructose corn syrup—a sweetener—in the ingredient deck. *Id.*

The fact that the Applesauce contains both sweeteners and Vitamin C is consistent with FDA regulations in place for over forty years. The FDA has a regulatorily-established "standard of identity" for applesauce, first adopted in 1977. *See* 21 C.F.R. § 145.110 (establishing "standard of identity" for "applesauce"); *see also* 42 Fed. Reg. 14412, 14415 (Mar. 15, 1977) (initial issuance of standard of identity for applesauce). Standards of identity are definitions promulgated by the FDA for certain standardized foods—things like "milk chocolate," "bread," or "ketchup"—that Congress directs the FDA to adopt "for the purpose of promoting honesty and fair dealing in the interest of consumers." *See* 21 U.S.C. § 341 ("Whenever in the judgment of the [FDA] such action will promote honesty and fair dealing in the interest of consumers, [it] shall promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity…."); *see also*, *e.g.*, 21 C.F.R.§ 155.194 (standard of identity for ketchup); 21 C.F.R. § 163.130 (milk chocolate).

Standards of identity contain both mandatory ingredients and processes, as well as "optional ingredients" that may be added to the food and then declared on the product label. *Id.* ("In prescribing a definition and standard of identity for any food or class of food in which optional ingredients are permitted, the Secretary shall, for the purpose of promoting honesty and fair dealing in the interest of consumers, designate the optional ingredients which shall be named on the label."). Here, the standard of identity for foods defined as "applesauce" allows as "optional ingredients" both "nutritive carbohydrate sweeteners" and "ascorbic acid (Vitamin C)." 21 C.F.R. 145.110(a)(2)(v), (viii)(b). So, for decades products available in the marketplace and referred to as "applesauce" have been permitted to contain both sweeteners and Vitamin C.

The FDA's definition of "applesauce," insofar as it anticipates that sweeteners may be added, is in keeping with dictionaries that likewise consistently define applesauce as a food that is "sweetened." *See* Lexico (via Oxford) ("applesauce. n. 1. A puree of stewed apples, *typically sweetened*."); Merriam-Webster ("applesauce. 1. a relish or desert made of apples stewed to a pulp

*and sweetened*"); Dictionary.com ("applesauce.n. 1. apples stewed to a soft pulp *and sometimes sweetened* or spiced with cinnamon") (available at); Cambridge Dictionary ("applesauce. n. *a sweet food* made from cooked apples) (available at:); Oxford Dictionary ("applesauce. n. a thick sauce made by cooking apples *and sugar* in a small amount of water") (emphases added).[2]

Mott's also uses real apples as an ingredient in its Applesauce, and so the labels state that the Products are "Made From 100% Real Fruit." RJN Exs. A - I. This language appears in the form of a graphical sticker on the image of an apple appearing on the Products' labels. *Id.* For the 48 oz. packaging variety, this "Made From 100% Real Fruit" language also appears on the back of the Products' label in the same panel as the ingredient deck. These elements of the Products' labels are depicted in Figure 1, below:



| Figure 1 | |
|---|---|
| **Graphical Sticker** | **Back Panel** |

---

[2] Links to these dictionary meanings are: Lexico: https://www.lexico.com/definition/apple_sauce; Merriam-Webster: https://www.merriam-webster.com/dictionary/applesauce); Dictionary.com: https://www.dictionary.com/browse/applesauce; Cambridge Dictionary: https://dictionary.cambridge.org/us/dictionary/english/applesauce; Oxford Dictionary: https://www.oxfordlearnersdictionaries.com/us/definition/american_english/applesauce.

RJN Exs. A (graphical sticker), H (back panel). The Applesauce labels also contain further additional clarifying language as to the meaning of this "Made From 100% Real Fruit" statement, explaining that the Products are "Made from real fruit which may contain seeds, stems or other pieces of natural fruit." This element of the Products' label is depicted in Figure 2, below:

| Figure 2 |
|---|
| APPLES, HIGH FRUCTOSE CORN SYRUP, WATER, ASCORBIC ACID (VITAMIN C). PRODUCED UNDER THE AUTHORITY OF MOTT'S LLP, 5301 LEGACY DRIVE, PLANO, TEXAS 75024. ™ & © 2019 MOTT'S LLP *Made from real fruit which may contain seeds, stems or other pieces of natural fruit.* |

Thus, Mott's Applesauce's labels: (1) identify the Products' ingredients, including high fructose corn syrup and Vitamin C; (2) contain additional information explaining the meaning of the "Made From 100% Real Fruit" statement; and (3) conform to both dictionary and FDA-established definitions of what foods called "applesauce" contain.

**B.    Plaintiff Alleges She Was Misled by the "Made From 100% Real Fruit" Statement Despite Other Information Contained on the Products' Labels.**

Plaintiff Amber Schneider (an Illinois resident) alleges she purchased Mott's Applesauce "after reviewing the packaging label and noting that it said 'Made From 100% Real Fruit.'" Complaint ¶ 13. She does not identify the flavor variety or package size of the Applesauce she purchased, noting only the purchase price and her most recent date of purchase. *Id.* (Plaintiff alleging she paid $2.74 for Applesauce purchased in March 2021).

The Complaint further alleges that the statement "Made From 100% Real Fruit" prompted Plaintiff to believe that "the Applesauce does not contain ingredients other than apples or other fruit." *Id.* ¶ 2. Plaintiff asserts that because high fructose corn syrup and Vitamin C are "not fruit," that the "Made From 100% Real Fruit" statement is therefore misleading. *Id.* ¶¶ 3-7. Thus, according to Schneider, "reasonable consumers reasonably believe" that the statement "Made

From 100% Real Fruit" means that Mott's Applesauce "does not contain any non-fruit ingredients." *Id.* ¶ 9. There are no further allegations of fact to suggest that a "reasonable consumer" would interpret Mott's Applesauce labels in this fashion.

Based on these allegations, Plaintiff asserts a cause of action under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") and claims for breach of express warranty and unjust enrichment. Complaint ¶¶ 46-68. The Complaint seeks certification of an Illinois class for the IFCA cause of action, and certification of a nationwide class for the express warranty and unjust enrichment counts. *Id.* ¶ 36. The Complaint seeks both damages and injunctive relief as remedies, although Plaintiff does not allege that she intends to buy Mott's Applesauce in the future. Prayer for Relief. *Id.* ¶¶ c, d (seeking "compensatory damages…or, alternatively…[for] Defendant to disgorge or pay restitution" and for the Court to "issue appropriate injunctive relief").

## III.    ARGUMENT

Plaintiff's case should be dismissed in full because the Applesauce labels are not misleading to a reasonable consumer. The "Made From 100% Real Fruit" claim is truthful and accurate, and the Products' labels even go so far as to explain what is meant by that statement. The relevant law is in accord, as multiple courts have held that a statement that a food is "made with" a certain ingredient, does not mean that it is "made *only*" from that ingredient. Moreover, no reasonable consumer would assume—contrary to what is plainly stated on the Products' labels themselves—that the Applesauce has no other ingredients. That assumption is contrary to the common dictionary meaning of the food "applesauce" and related FDA regulations defining that food and its characteristics. The Complaint should be dismissed in full and with prejudice.

The remaining claims in the Complaint, for unjust enrichment and breach of express warranty, are dependent on the same theory of deception as the ICFA claim. Under settled law, because the ICFA claim fails, these claims necessarily fail as well. Additionally, Plaintiff's request for injunctive relief must be dismissed for lack of Article III standing.

-6-

A.      **Plaintiff's Claims Fail Under the Reasonable Consumer Standard.**

To establish a claim under ICFA, a Plaintiff must allege "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). The "deceptive act or practice" prong of Plaintiff's ICFA claim is evaluated under the "reasonable consumer" standard: "Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception." *Freeman v. MAM USA Corp.*, — F.Supp.3d —, 2021 WL 1103350, at *7 (N.D. Ill. Mar. 23, 2021). Under this standard, "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020).

"[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels, dismissal on the pleadings may well be justified." *Id.* at 478; *accord Vanlaningham v. Campbell Soup Co.*, 492 F. Supp. 3d 803, 809 (N.D. Ill. 2020) (Rosenstengel, J.) ("[T]here are situations where the construction [of a challenged label] proposed by a plaintiff may be so illogical or impossible that a Court would be warranted in dismissing as a matter of law a claim under the ICFA."). So, where a plaintiff's interpretation of a label is unreasonable or contrary to common sense, dismissal is warranted. *Galanis v. Starbucks Corp.*, 2016 WL 6037962, at *3 (N.D. Ill. Oct. 14, 2016) (dismissing ICFA claim under "reasonable consumer" standard where plaintiff's interpretation of meaning of "iced drink" on defendant's menus was "unreasonable" and contradicted by "common sense"); *Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018) (use of term "value" on fast food restaurant not misleading to a reasonable consumer where "plaintiff may not have wished to take the time to compare prices, but there is no question that doing so would have dispelled the deception on which are claims are based"); *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001) (court may dismiss ICFA claim as a matter of law); *Washington v. Hyatt Hotels Corp.*, 2020 WL 3058118, at *4–5 (N.D. Ill. Jun. 9,

2020) (dismissing complaint at Rule 12 stage for failure to allege facts sufficient to state a claim under "reasonable consumer standard).

Here, Plaintiff's unreasonable interpretation of the phrase "Made From 100% Real Fruit," her tunnel-visioned reading of the Applesauce labels, and her assumptions about the nature of the Product itself, all compel dismissal under the reasonable consumer standard.

1. **Mott's Applesauce labels do not deceive a "reasonable consumer" into believing that "Made From 100% Real Fruit" means "Made From [Only] 100% Real Fruit."**

Numerous courts have repeatedly held that a "reasonable consumer" understands that if a product is labeled as having been "made from" or "made with" a particular ingredient, that does not mean the product is made *only* from that ingredient—or even that it contains that ingredient in a particular amount. *See Weaver v. Champion Petfoods USA, Inc.*, 3 F.4th 927, 937 (7th Cir. 2021) ("Several district courts have held that references to ingredients used do not imply that ingredient is used exclusively.") (citing *Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *4 (E.D.N.Y. July 10, 2020); *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *4 (E.D.N.Y. Feb. 13, 2020); *Henderson v. Gruma Corp.*, 2011 WL 1262188, at *12 (C.D. Cal. Apr. 11, 2011)); *see also Song v. Champion Pet Foods*, 2020 WL 7624861, at *7 (D. Minn. Dec. 22, 2020) ("[A] statement that mashed potatoes are made with 'real butter' does not imply that the *only* fat used is real butter, and just as a statement that graham crackers are made with 'real honey' does not imply that the *only* sweetener used is real honey[.]") (emphases in original); *Reyes v. Crystal Farms Refrig. Distrib. Co.*, 2019 WL 3409883, at *3 (E.D.N.Y. Jul. 26, 2019) ("The statement 'made with real butter' does not violate [the 'reasonable consumer' standard] because it is not misleading."); *Chuang v. Dr Pepper Snapple Group, Inc.*, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) ("Likewise, other courts in this circuit have dismissed complaints contending that 'made with' claims or images of a certain ingredient on labels convey to consumers that the product contains a 'significant' amount of that ingredient, as plaintiff contends here.").

Indeed, a claim very similar to the one challenged here has been dismissed under the "reasonable consumer" standard where the product did, in fact, contain fruit as represented. *See*

*Bruton v. Gerber Prods.*, 961 F.Supp.2d 1062, 1098 (N.D. Cal. 2013) ("[Plaintiff] fails to explain why a label claiming that a product is 'Made with 100% Natural Fruit' plausibly implies that the *entire* product—which contains ingredients other than fruit —is free of synthetic ingredients or ingredients not normally expected to be in food.") (emphasis in original); *reversed and remanded on other grounds Bruton v. Gerber Prods.*, 703 Fed. Appx. 468 (9th Cir. Jul. 17, 2017).

This consistent body of "reasonable consumer" law applies with full force here. Plaintiff alleges that the phrase "Made From 100% Real Fruit" must be interpreted to mean that the product is "Made From [Only] 100% Real Fruit." Complaint ¶¶ 2, 9. But a reasonable consumer understands that a reference to an ingredient does not mean that it is the sole or exclusive ingredient in the food. *Weaver*, 3 F.4th at 937. To do so would read the words "Made From" out of the challenged claim, which would violate the principle of law that a "reasonable consumer" can and should be expected to "take into account all the information available to [her] and the context in which that information is provided and used." *Bell*, 982 F.3d at 477. The plain meaning of the statement "Made From 100% Real Fruit" is that the Applesauce contains fruit as an ingredient, and the fruit used is "100% Real." Plaintiff's contrary interpretation of the claim, which depends on inserting words that are not there, simply cannot be sustained under the "reasonable consumer" standard. *Bruton*, 961 F.Supp.2d at 1098.

Moreover, the "information" and "context" on the Applesauce labels, *Bell*, 982 F.3d at 477, goes even further in explaining what is meant by the challenged claim. The label contains an additional clarifying statement that the Applesauce is "Made from real fruit which may contain seeds, stems or other pieces of natural fruit." *See* RJN Ex. A. Thus, the Applesauce labels affirmatively explain to consumers that because 100% real fruit is used, consumers should expect that things like stems and seeds found in real fruit could make their way into the finished Products. Although the "Made From 100% Real Fruit" claim is accurate and non-misleading on its face, this additional information on the label resolves any doubt as to the statement's meaning—even for an unreasonable consumer like Plaintiff. *Chuang*, 2017 WL 4286577, at *4 (relying on additional clarifying language on label as to meaning of "real fruit" claim); *Moore v. Trader Joe's Co.*, 4 F.

4th 874, 884-85 (9th Cir. 2021) (additional labeling claims related to the challenged labeling claim must be considered when evaluating deception as a whole).

And, of course, any claimed deception as to whether the Applesauce contains "ingredients other than apples," Complaint ¶ 2, is equally dispelled by the fact that the ingredient list for the products discloses that it contains a sweetener (high fructose corn syrup) and Vitamin C in the form of ascorbic acid. This information further discredits and renders implausible Plaintiff's reading of the Products' labels. *Reyes*, 2019 WL 3409883, at *3 (any alleged confusion as to whether "made with real butter" meant that only butter used dispelled by listing of ingredients); *Song*, 2020 WL 7624861, at *9 (statement that pet food "made with regional red meats and fish" does not mislead consumers into believing all ingredients are regional, where fact of non-regional ingredients disclosed on label). Thus, no "reasonable consumer" would interpret "Made From 100% Real Fruit" as Plaintiff has read it—an interpretation that is contrary to the language of the challenged claim itself and contradicted by other information on the Products' labels.

2.    **Reasonable consumers understand, based on dictionary definitions and FDA regulations, that applesauce may contain more than one ingredient.**

Reasonable consumers are expected to have some basic understanding of the nature of the product they are buying and are not entitled to unreasonable assumptions about that product. *Galanis v. Starbucks Corp.*, 2016 WL 6037962, at *3 (N.D. Ill. Oct. 14, 2016) (dismissing ICFA claim under "reasonable consumer" standard where plaintiff's interpretation of meaning of "iced drink" on defendant's menus was "unreasonable"). Consistent with this principle, courts consider both the common meanings of words found in dictionaries and relevant regulations to evaluate whether a plaintiff's claim survives review under the "reasonable consumer" standard. *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d, 757, 758 (relying on dictionary meaning of term "refined" to inform a reasonable consumer's understanding); *Spector v. Mondelez Int'l, Inc.*, 2017 WL 4283711, at *5 (N.D. Ill. Sept. 27, 2017) (rejecting plaintiffs' interpretation of label as contrary to dictionary definition of term "energy"); *see also Becerra v. Dr Pepper/ Seven Up, Inc.*, 945 F.3d 1225, 1229–30 (9th Cir. 2019) (rejecting plaintiff's interpretation of the word "diet" for "diet soda"

as contrary to dictionary meanings); *Reyes*, 2019 WL 3409883, at *4 (relying on FDA definition of "fresh" to evaluate whether challenged claim was misleading); *Ivie v. Kraft Foods Glob., Inc.*, 2013 WL 685372, at *12 (N.D. Cal. Feb. 25, 2013) (FDA Industry Guidance relevant to reasonable consumer understanding); *Moore*, 4 F.4th at 881 (relying, for purposes of "reasonable consumer" analysis, on accuracy of labeling claims as determined by FDA guidelines).

Here, these additional sources of authority discredit Plaintiff's interpretation of Mott's Applesauce labels. The premise of Plaintiff's claimed deception is an assumption that because the Products are labeled "Made From 100% Real Fruit," that no other ingredients besides fruit are present. Complaint ¶ 2. But this assumption, aside from being readily contradicted by the label itself, *see infra* Part II.A, is contrary to both the dictionary meaning of the term "applesauce" and the longstanding FDA standard of identity used to define that food.

Dictionary definitions of the term "applesauce," a food that consumers are readily familiar with, are remarkably consistent in defining it as a food made with apples that are *sweetened*. *See* Lexico (via Oxford) ("applesauce. n. 1. A puree of stewed apples, *typically sweetened*."); Merriam-Webster ("applesauce. 1. a relish or desert made of apples stewed to a pulp *and sweetened*"); Dictionary.com ("applesauce.n. 1. apples stewed to a soft pulp *and sometimes sweetened* or spiced with cinnamon") (available at); Cambridge Dictionary ("applesauce. n. *a sweet food* made from cooked apples) (available at:); Oxford Dictionary ("applesauce. n. a thick sauce made by cooking apples *and sugar* in a small amount of water") (emphases added). So, Plaintiff's claimed surprise that Mott's Applesauce contains other ingredients such as sweeteners is contrary to the common definition of that food, a definition that would inform a reasonable consumer's expectation about the product. *Becerra*, 945 F.3d at 1230 ("Diet soft drinks are common in the marketplace and the prevalent understanding of the term in that context is that the 'diet' version of a soft drink has fewer calories than its regular counterpart."); *Ibarrola*, 83 F. Supp. 3d at 758; *Spector*, 2017 WL 4283711, at *5; *Rivas v. Hershey Co.*, 2020 WL 4287272, at *4 (E.D.N.Y. Jul. 27, 2020) (relying on dictionary definitions of "white" and "crème," which contradicted plaintiff's interpretation of the label, to dismiss on reasonable consumer grounds).

The same thing is true as to FDA regulations, which likewise discredit Plaintiff's unwarranted assumption that the Applesauce contains no other ingredients besides fruit. The FDA has a "standard of identity" for applesauce, which is a consistent definition for that food the agency has adopted "to promote honesty and fair dealing in the interest of consumers." 21 U.S.C. § 341. That definition, first adopted in 1977, anticipates that foods called "applesauce" may contain both sweeteners and Vitamin C as optional ingredients. 21 C.F.R. 145.110(a)(2)(v), (viii)(b). So, for forty-four years, when consumers have encountered foods labeled "applesauce" in the marketplace, under the applicable FDA standard of identity these ingredients are among those the food could be expected to contain. This likewise demonstrates the unreasonableness of Plaintiff's interpretation of the Products' labels. *Ibarrola*, 83 F. Supp. 3d at 757–58 (a "reasonable consumer" not misled by claim "no refined sugar," where plaintiff's definition implausible in light of contrary USDA Guidance and FDA regulations for sugar); *Moore*, 4 F.4th at 881 (FDA guidance informs reasonable consumer's understanding of the nature and characteristics of a food product); *Reyes*, 2019 WL 3409883, at *4.

### 3. The claim "Made With 100% Real Fruit" is truthful and unambiguous.

When interpreted according to its plain language and the relevant law, the statement "Made From 100% Real Fruit" is accurate and non-misleading. *See* Part III.A.1-2, *infra*. As the "Made From" language denotes, the statement truthfully reflects that Mott's Applesauce has "100% Real Fruit" as an ingredient. *Id.* The Complaint does not contest this fact, nor even suggest that fruit is present in an insufficient amount. Mott's nonetheless expects that Plaintiff will respond by arguing that the "Made With 100% Real Fruit" claim is at least ambiguous, and that under *Bell v. Publix Super Markets, Inc.*, this ambiguity means that Rule 12 dismissal is improper. *Bell* does not control given the facts of this case, as subsequent Seventh Circuit authority confirms.

In *Bell*, the Seventh Circuit reversed the dismissal of a putative class action challenging the statement "100% Grated Parmesan Cheese" appearing on the labels of defendants' canned parmesan cheeses. 982 F.3d at 473. Plaintiffs alleged this statement was misleading because the product contained non-cheese ingredients, including cellulose powder and potassium sorbate. *Id.*

The district court dismissed on grounds that the products' ingredient list, which disclosed the presence of these ingredients, clarified any ambiguity in the meaning of the claim. *Id.* at 474. The panel in *Bell* reversed, explaining that "the reasonable consumer standard does not presume, at least as a matter of law, that reasonable consumers will test prominent front-label claims by examining the fine print on the back label." *Id.* at 477. *Bell* is readily distinguishable.

First, *Bell* is readily distinguishable, as the label in Bell did not claim that the product was "Made From" a certain ingredient—rather, the label at issue merely stated "100% Grated Parmesan Cheese." Thus, *Bell* does not address—much less overrule—the vast body of case law that holds that a statement that a food is "made with" a certain ingredient does *not* mean that the food is made "only with" that ingredient. *See infra* Part III.A.1. As these cases show, a reasonable consumer takes from the words "Made From" that the identified ingredient is present in the product, but not that it is the *exclusive* ingredient in the product. So, *Bell*'s ambiguity analysis is inapposite here because the challenged claim simply is not susceptible to the reading Plaintiff attempts to place on it.

Any doubt as to the ongoing vitality of this "made with" line of authority was resolved by the Seventh Circuit in *Weaver v. Champion Pet Foods*, 3 F.4th 921 (7th Cir. 2021), decided seven months after *Bell*. In *Weaver*, the Seventh Circuit affirmed summary judgment in favor of the defendant as to several allegedly misleading statements on the defendant's pet food. In doing so, the Seventh Circuit cited with approval four different district court cases all holding that a reference to a food "made with" a certain ingredient does not mean the food was made *only* with that ingredient. *Weaver*, 3 F.4th at 937 ("Several district courts have held that references to ingredients used do not imply that ingredient is used exclusively."). And while *Weaver* itself is a summary judgment decision, each of the cases cited for this proposition are Rule 12 dismissals. The only sensible way to read this portion of the *Weaver* decision is that the Seventh Circuit concluded that these cases were correctly decided.

Second, *Bell* leaves undisturbed two important points of law as to the reasonable consumer analysis generally. Although the panel in *Bell* reversed, it was careful to note that the reasonable

consumer analysis still requires that courts evaluating "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." 982 F.3d at 477. And the court likewise reaffirmed that "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Id.*; *see also Moore*, 4 F.4th at 883 (Ninth Circuit interpreting *Bell* to require a full assessment of the labels and context in which the underlying product is sold and understood) (affirming Rule 12 dismissal). Here, the "full context" of the label affirms that the "Made From 100% Real Fruit" claim does not mean, nor is it reasonably understood to mean, that fruit is the only ingredient in the Applesauce. *See infra* Part II.A. And it is likewise an "unreasonable [] interpretation of [the Applesauce] labels," *Bell*, 982 F.3d at 477, to believe that applesauce—contrary to what is on the label itself and also contradicted both by dictionary definitions and FDA regulations—contains only fruit and no other ingredients. Thus, dismissal here can be easily reconciled with the language of *Bell* and Seventh Circuit reasonable consumer jurisprudence more broadly.

## B.     Plaintiff's Unjust Enrichment and Breach of Warranty Claims Necessarily Fail Along With the ICFA Claim.

The remaining claims in the Complaint, for unjust enrichment and breach of express warranty, are dependent on the same theory of deception as the ICFA claim. Under settled law, because the ICFA claim fails, these claims necessarily fail as well.

First, Plaintiff's unjust enrichment claims fail along with her ICFA claim. "Under Illinois law, there is no stand-alone claim for unjust enrichment." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). Instead, Illinois courts describe it as "a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence . . ." *Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*, 137 Ill. App. 3d 84 90-91 (1985). The request for relief based on unjust enrichment is therefore "tied to the fate of the claim under the [ICFA]." *Vanzant v. Hill's Pet Nutrition, Inc.,* 934 F.3d 730, 740 (7th Cir. 2019). Because Plaintiff has failed to state a claim under the ICFA, she has also failed to state a

claim for unjust enrichment. The same is true for Plaintiff's breach of warranty claim. She fails to allege that Mott's breached any warranty because no reasonable consumer believes that the "Made With 100% Real Fruit" claim is a warranty the Applesauce contains *only* fruit ingredients. *See supra* Part A.1; *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 674 (N.D. Ill. Mar. 31, 2016) (breach of warranty claims fail with ICFA claims).

## C. Plaintiff Lacks Standing to Seek Injunctive Relief.

Plaintiff's request for injunctive relief should be dismissed for lack of Article III standing because Plaintiff fails to allege that she is likely to be harmed in the future. To seek injunctive relief, a plaintiff must show a "real and immediate threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). So, in a putative class action where the plaintiff alleges defendant's advertising is false or misleading and was deceived into purchasing a product she does not want, she has no threat of future injury because she is unlikely to buy the product again in the future. *Burton v. Hodgson Mill, Inc.*, 2017 WL 1282882, at *7 (S.D. Ill. Apr. 6, 2017). Here, Plaintiff requests that the Court "issue appropriate injunctive relief." Prayer for Relief ¶ c. But Plaintiff's Complaint reveals that she is now aware that the Applesauce contains Non-Fruit ingredients. Complaint ¶¶ 3-7. Because Plaintiff is aware of the alleged deception and expresses no intention of purchasing the Applesauce in the future, she lacks standing to seek injunctive relief. *Burton*, 2017 WL 1282882 at *7.

## IV. CONCLUSION

For the foregoing reasons, Mott's respectfully requests that this Court grant its Motion to Dismiss and dismiss the Complaint in its entirety with prejudice.

DATED: November 8, 2021

PERKINS COIE LLP


By: */s/ Charles C. Sipos*
    Charles Sipos, *pro hac vice*
    CSipos@perkinscoie.com
    Jasmine W. Wetherell, *pro hac vice*
    JWetherell@perkinscoie.com
    Emily Craven, Bar No. 6332587
    ECraven@perkinscoie.com

    Attorneys for Mott's LLP


Emily Craven
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Tel: (312) 324-8400
Fax: (312) 324-9400

Charles C. Sipos, *pro hac vice*
CSipos@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel: (206) 359-3316
Fax: (206) 359-4316

David T. Biderman, *pro hac vice* pending
DBiderman@perkinscoie.com
Jasmine W. Wetherell, *pro hac vice*
JWetherell@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Tel:  310.788.9900
Fax:  310.843.1284

## <u>CERTIFICATE OF SERVICE</u>

I, Charles Sipos, certify that on November 8, 2021, at my direction the foregoing

**MOTION TO DISMISS** was electronically filed with the Clerk of the Court using the CM/ECF

system, which effected service on the following attorneys:

David C. Nelson (ARDC 6225722)
Nelson & Nelson, Attorneys at Law, P.C.
420 North High Street
Belleville, Illinois 62220
Tel: 618-277-4000
Email: dnelson@nelsonlawpc.com

Matthew H. Armstrong (ARDC 6226591)
Armstrong Law Firm LLC
8816 Manchester Rd., No. 109
St. Louis, Missouri 63144
Tel: 314-258-0212
Email: matt@mattarmstronglaw.com

Stuart L. Cochran (pro hac vice application forthcoming)
Texas State Bar No. 24027936
Blake E. Mattingly (pro hac vice application forthcoming)
Texas State Bar No. 24104229
Steckler Wayne Cochran Cherry PLLC
12720 Hillcrest Rd., Ste. 1045
Dallas, TX 75230
Tel: 972-387-4040
Email: stuart@swclaw.com
Email: blake@swclaw.com

Attorneys for the Putative Class

I certify under penalty of perjury that the foregoing is true and correct.


/s/   Charles Sipos
Charles Sipos

154466379.4