IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AMBER SCHNEIDER, individually and on behalf of all other similarly-situated current citizens of Illinois and the United States,<br><br>    Plaintiffs,<br><br>v.<br><br>MOTT'S LLP,<br><br>    Defendant. | Case No. 3:21-CV-01251-NJR |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PLAINTFF'S COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii

I.    INTRODUCTION ................................................................................................1

II.    LEGAL STANDARD ..........................................................................................2

III.    ARGUMENTS & AUTHORITIES.......................................................................2

    A.    Whether "MADE FROM 100% REAL FRUIT" deceives a reasonable consumer is an issue of fact................................................................3

    B.    Plaintiff's proposed construction is neither unreasonable nor fanciful .............4

    C.    Defendant's "ingredient-list" defense was expressly rejected by *Bell* ..............6

    D.    Defendant's reliance on FDA regulations was expressly rejected by *Bell*, and dictionary definitions support Plaintiff's construction of the advertisement........................................................................7

    E.    There is no bright-line rule that "made from" or "made with" advertisements are not deceptive as a matter of law .........................................9

    F.    Plaintiff's breach of express warranty and unjust enrichment claims are well-pleaded........................................................................11

IV.    CONCLUSION ...................................................................................................12

CERTIFICATE OF SERVICE.........................................................................................13

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Bell v. Publix Super Markets, Inc.*,
    982 F.3d 468 (7th Cir. 2020) ........................................................................................... passim

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 2

*Burton v. Swan Surfaces, LLC*,
    No. 20-cv-499-SPM, 2021 WL 793983 (S.D. Ill. Mar. 2, 2021) ............................ 7

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
    475 F. App'x 113 (9th Cir. 2012) ........................................................................... 5

*Connick v. Suzuki Motor Co., Ltd.*,
    675 N.E.2d 584 (Ill. 1996) ............................................................................................. 3, 5

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
    No. MDL-1703, 2009 WL 937256 (N.D. Ill. Apr. 6, 2009) ................................. 2, 5

*Kennedy v. Mondelez Glob. LLC*,
    No. 19-CV-302-ENV-SJB, 2020 WL 4006197 (E.D.N.Y. July 10, 2020) ........... 11

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
    661 F. Supp. 2d 940 (N.D. Ill. 2009) ....................................................................... 4

*McKinnis v. Kellogg USA*,
    No. CV 07-2611 ABC (RCx), 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ....... 5

*Nashville Syrup Co. v. Coca Cola Co.*,
    215 F. 527 (6th Cir. 1914) ....................................................................................... 11

*Oliveira v. Amoco Oil Co.*,
    776 N.E.2d 151 (Ill. 2002) ........................................................................................ 3

*Pisciotta v. Old Nat'l Bancorp*,
    499 F.3d 629 (7th Cir. 2007) ................................................................................ 2, 5

*Red v. Kraft Foods, Inc.*,
    No. 10-1028-GW(AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) .............. 5

*Vanlaningham v. Campbell Soup Co.*,
  No. 3:20-cv-00647-NJR, 2020 WL 5893523 (S.D. Ill. Oct. 5, 2020) ...................... 4

*Weaver v. Champion Petfoods USA, Inc.*,
  3 F.4th 927 (7th Cir. 2021) ...................................................................... 9, 10, 11

*Weaver v. Champion Petfoods USA, Inc.*,
  No. 18-CV-1996-JPS, 2019 WL 2774139 (E.D. Wis. July 1, 2019) ...................... 9

*Werbel v. Pepsico, Inc.*,
  No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ...................... 5

*York v. Andalou Naturals, Inc.*,
  No. 16-CV-894-SMY-DGW, 2016 WL 7157555 (S.D. Ill. Dec. 8, 2016) ............. 6

**RULES**

Rule 12(b)(6) .................................................................................................................. 2

**OTHER AUTHORITIES**

Cambridge Dictionary: https://dictionary.cambridge.org/us/dictionary/english/made ....... 8

Cambridge Dictionary: https://dictionary.cambridge.org/us/dictionary/english/make ....... 8

Cambridge Dictionary: https://dictionary.cambridge.org/us/dictionary/english/from ........ 8

Merriam-Webster Dictionary:
  https://www.merriam-webster.com/dictionary/100%20percent#:~:text=
  Definition%20of%20100%20percent,agree%20with%20her%20100%20percent ....... 8

Cambridge Dictionary: https://dictionary.cambridge.org/us/dictionary/english/real .......... 8

Cambridge Dictionary: https://dictionary.cambridge.org/us/dictionary/english/fruit ......... 8

##### I. INTRODUCTION

This lawsuit arises out of Defendant Mott's LLP's deceptive, unfair, and false merchandising practices regarding its Applesauce; Applesauce Cinnamon; Applesauce Pear; Applesauce Tropical; Applesauce Strawberry; Applesauce Mixed Berry; and Applesauce Mango Peach (collectively, the "**Applesauce**"). Compl. [Dkt. 1-1] at ¶ 1. The labels of the Applesauce include the following representation: "MADE FROM 100% REAL FRUIT." *Id.* at ¶ 2. Defendant's representation leads reasonable consumers, including Plaintiff, to believe that the Applesauce does not contain ingredients other than 100% real fruit. *Id.*

Contrary to the "MADE FROM 100% REAL FRUIT" representation, the Applesauce contains high fructose corn syrup, which is a highly industrialized food-grade sweetener that is manufactured from the isomerization of glucose in corn syrup into fructose. *Id.* at ¶ 4. It is undisputed that high fructose corn syrup is not 100% real fruit. *See* Def.'s Memo. in Supp. [Dkt. 20] at 1 (Applesauce "made predominantly from real fruit . . . and also contain high fructose corn syrup . . . and" ascorbic acid).[1]

The Applesauce also contains ascorbic acid, which is a commercially-manufactured food additive used in processed foods primarily as an antioxidant, i.e., a preservative. Compl. [Dkt. 1-1] at ¶ 6. It is undisputed that ascorbic acid is not 100% real fruit and does not come from the seeds, stems, or pieces of natural fruit. *See* Def.'s Memo. in Supp. [Dkt. 20] at 1.

Defendant's misrepresentations on the Applesauce labels constitutes unfair and deceptive practices in commerce under Illinois law (Count I). *See* Compl. [Dkt. 1-1] at ¶¶ 46-54.

---

[1] The Applesauce also contains additional language on the labels: "Made from real fruit which may contain seeds, stems, or other pieces of natural fruit." Def.'s Memo. in Supp. [Dkt. 20] at 1. It cannot be disputed that the high fructose corn syrup included in the Applesauce does not come from the seeds, stems, or pieces of natural fruit.

Defendant's misrepresentations similarly caused it to breach the express warranty—"MADE FROM 100% REAL FRUIT"—provided to each customer, including Plaintiff (Count II). *Id.* at ¶¶ 55-63. In the alternative, even if the Applesauce did not violate the Illinois Consumer Fraud Act ("**ICFA**") or constitute breach of warranty, Defendant has been unjustly enriched by misleading consumers into purchasing Applesauce labeled, "MADE FROM 100% REAL FRUIT," while including ingredients that are not 100% real fruit. *Id.* at ¶¶ 64-68.

## II.     LEGAL STANDARD

"The purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to resolve the case on the merits." *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. MDL-1703, 2009 WL 937256, at *1 (N.D. Ill. Apr. 6, 2009) (citation omitted). The Court takes the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). In order to survive a motion to dismiss, plaintiffs "need only 'nudge[] their claims across the line from conceivable to plausible.'" *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020) (alteration original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.    ARGUMENTS & AUTHORITIES

Defendant moves to dismiss, with prejudice, each of Plaintiff's claims under Rule 12(b)(6). Defendant posits five arguments in support of dismissal: (1) the Applesauce labels are not misleading to a reasonable consumer; (2) the "MADE FROM 100% REAL FRUIT" representation is true and accurate; (3) "multiple courts have held" that a "made with" representation does not mean the product is "made *only*" from that ingredient; (4) the ingredient-list on the back of the Applesauce labels dispels any confusion over the ingredients; and (5) the dictionary definition of applesauce and FDA regulations relating thereto preclude consumers from interpreting "MADE

FROM 100% REAL FRUIT" in a way other than that the Applesauce may contain some 100% real fruit. Def.'s Memo. in Supp. [Dkt. 20] at 6. With the exception of Defendant's third argument, Defendant's arguments were each rejected by *Bell v. Publix Super Markets, Inc.*

Defendant's third argument, that "multiple courts" have held that a "made with" claim is not deceptive under the ICFA, also fails for several reasons including: (1) the authorities Defendant cites *denied* motions to dismiss under similar facts as this case, and the cited authorities were reviewing summary judgment decisions; (2) those cases address "made *with*" representations, not "made *from*" representations, like the Applesauce; and (3) those cases do not involve "100%" representations, like the Applesauce.

### A. Whether "MADE FROM 100% REAL FRUIT" deceives a reasonable consumer is an issue of fact.

Defendant argues that Plaintiff fails to plausibly allege a deceptive act or practice that would deceive a reasonable consumer. *See generally* Def.'s Memo. in Supp. [Dkt. 20] at 8-15. In other words, Defendant argues that Plaintiff fails to adequately plead causation because her "proposed construction" of the Applesauce representation is implausible on its face because it is fanciful or unreasonable.

As the Illinois Supreme Court has made clear, "to properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the [ICFA], a plaintiff must allege that he was, in some manner, deceived." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002); *cf.* Compl. [Dkt. 1-1] at ¶ 49. "[T]he required allegation of proximate cause is minimal since that determination is best left to the trier of fact." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 595 (Ill. 1996) (citation omitted).

Specifically, in cases involving false advertising, "whether a claim is either false or misleading is an issue of fact rather than law" "[r]egardless of the theory advanced by the plaintiff."

3

*Bell*, 982 F.3d at 479 (internal quotations omitted, alteration added) (quoting *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 948 (N.D. Ill. 2009)). "It is not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive." *Id.*

The only situation where dismissal on the pleadings may be justified is "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising." *Bell*, 982 F.3d at 477; *see also Vanlaningham v. Campbell Soup Co.*, No. 3:20-cv-00647-NJR, 2020 WL 5893523, at *4 (S.D. Ill. Oct. 5, 2020). In order to dismiss Plaintiff's claims based on her "proposed construction," Defendant carries the burden to show Plaintiff's construction is implausible on its face, which "is a high bar to reach" at the pleading stage. *See Vanlaningham*, 2020 WL 5893523, at *4.

**B.  Plaintiff's proposed construction is neither unreasonable nor fanciful.**

Plaintiff's understanding of the "MADE FROM 100% REAL FRUIT" representation is that the statement is literally true: The Applesauce is made from 100% real fruit. In other words, the ingredients in the Applesauce are 100% real fruit. Plaintiff's literal interpretation is not implausible on its face.

Other courts have reached the same conclusion. For example, in *Bell*, the court found that the plaintiff's construction of "100% Grated Parmesan Cheese" to mean that the product is actually 100% parmesan cheese that is grated was "certainly a plausible reading" of the advertisement. 982 F.3d at 476-77. The same is true here. Plaintiff's reading of the representation on the Applesauce, that the product is 100% real fruit, is certainly plausible, as well. *See id.*

Further, Defendant's alternative construction of the advertisement, that no reasonable consumer would interpret "MADE FROM 100% REAL FRUIT" to mean that the Applesauce

4

ingredients are 100% real fruit, defies common sense (and logic). *See* Def.'s Memo. in Supp. [Dkt. 20] at 8-9. Defendant's construction implies that there are "real fruit" ingredients that are somehow less than 100% real fruit. Otherwise, the modifier, "100%," on the label is superfluous and does not modify anything, designed to make consumers believe that the Applesauce is made from 100% real fruit when it is not. This is the type of conduct the *Bell* court pointed out in rejecting the "ambiguity rule" applied by the district court in dismissing Plaintiff's claims: "Deceptive advertisements often intentionally use ambiguity to mislead consumers while maintaining some level of deniability about the intended meaning." 982 F.3d at 477.

Accepting Defendant's argument and proposed construction of its own deceptive and ambiguous advertising would reverse the pleading burden by accepting Defendant's contentions as true, rather than Plaintiff's, while simultaneously delving into the merits of Plaintiff's claims. Neither is appropriate at the pleading stage, which is why courts leave this issue to the finder of fact. *See Bell*, 982 F.3d at 476; *Pisciotta*, 499 F.3d at 633; *In re Sears*, 2009 WL 937256, at *1; *Connick*, 675 N.E.2d at 595.

In *Bell*, the court identified several cases that found unreasonable or fanciful interpretations warranting dismissal. 982 F.3d at 477-78.[2] For example, in *Werbel*, the plaintiff alleged that the "public are likely to be deceived into believe that Cap'n Crunch derives nutrition from actual fruit by virtue of the reference to 'Berries' and because the Crunch Berries allegedly are 'shaped to

---

[2] (citing *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) ("It is implausible that a reasonable consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to imply that Drumstick is more wholesome or nutritious than competing products."); *Red v. Kraft Foods, Inc.*, No. 10-1028-GW(AGRx), 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("Made with Real Vegetables" label on box of crackers could not reasonably mean crackers were "composed of primarily fresh vegetables"); *Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (colorful "crunch berries" on Cap'n Crunch box did not reasonably promise fresh fruit); *McKinnis v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (same for Froot Loops).

5

resemble berries.'" 2010 WL 2673860, at *3 (citation omitted). The court concluded, as a matter of law, that "[i]t is obvious from the product packaging that no reasonable consumer would believe that Cap'n Crunch derives any nutritional value from berries." *Id.* (alteration added).

The case at bar does not involve a fanciful or unreasonable interpretation. There is nothing conspicuous on the label which would prompt consumers to doubt that the representation "MADE FROM 100% REAL FRUIT" means what it says.

### C. Defendant's "ingredient-list" defense was expressly rejected by *Bell*.

This case is analogous to *Bell*, where the plaintiff sued various manufacturers and major retailers of Parmesan cheese sold in shaker tubes that were labeled as "100% Grated Parmesan Cheese." 982 F.3d at 473-74. The back of the cheese containers indicated that the products are not 100% cheese because they contain cellulose powder and potassium sorbate. *Id.* at 474. The plaintiff alleged that the "100% Grated Parmesan Cheese" representation on the front is deceptive under the ICFA and related state consumer protection statutes. *Id.*

Here, like the defendants in *Bell*, Defendant asserts the "ingredients-list" defense, arguing that Plaintiff could not have been deceived by the "MADE FROM 100% REAL FRUIT" representation because the ingredient list on the back of the label discloses that the Applesauce contains high fructose corn syrup and ascorbic acid. *See* Def.'s Memo. in Supp. [Dkt. 20] at 10; *Bell*, 982 F.3d at 476-478. The Seventh Circuit expressly rejected that argument "in holding that an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Bell*, 982 F.3d at 476; *see also York v. Andalou Naturals, Inc.*, No. 16-CV-894-SMY-DGW, 2016 WL 7157555, at *3 (S.D. Ill. Dec. 8, 2016) ("This so-called 'ingredient list' defense has been rejected by numerous courts.") (citing cases).

This Court should not accept Defendant's invitation to ignore binding precedent. *See Burton v. Swan Surfaces, LLC*, No. 20-cv-499-SPM, 2021 WL 793983, at *5, *7 (S.D. Ill. Mar. 2, 2021) (court cannot "ignore Seventh Circuit precedent").

**D. Defendant's reliance on FDA regulations was expressly rejected by *Bell*, and dictionary definitions support Plaintiff's construction of the advertisement.**

Defendant also argues that the "MADE FROM 100% REAL FRUIT" representation is not deceptive because, based upon dictionary definitions and FDA regulations relating to applesauce, Plaintiff's interpretation of the label "is contrary to the common definition of that food." Def.'s Memo. in Supp. [Dkt. 20] at 10-11. The Seventh Circuit similarly rejected this argument.

The *Bell* defendants argued that the FDA definition of "grated cheese" allows products containing added cellulose and potassium sorbate to be called "grated cheese." 982 F.3d at 481. The court noted, "[w]e have no quarrel with defendants' ability to call their products 'grated cheese.' The problem lies in the '100%,' especially since the pleadings provide reason to think that consumers understand '100% grated cheese' to mean that the cheese does not have the additives." *Id.*; *cf.* Compl. [Dkt. 1-1] at ¶ 9.

The same holds true here. Simply because FDA guidelines allow Defendant to call the Applesauce "applesauce" says nothing about Defendant's choice to modify that word by calling it "100% REAL FRUIT." If a different company made applesauce containing only apples and no added high fructose corn syrup or ascorbic acid, then there would be no way for consumers to tell the difference between that 100%-apple applesauce and Defendant's "100% real fruit" Applesauce. *See Bell*, 982 F.3d at 482.

Moreover, Plaintiff is not claiming that the Defendant violated the ICFA by labeling the product "applesauce." Plaintiff claims the "MADE FROM 100% REAL FRUIT" advertisement is deceptive. Neither the dictionary definitions nor FDA regulations pertaining to applesauce have

7

any impact on the "MADE FROM 100% REAL FRUIT" representation, which, critically, does not even contain the word "applesauce." Defendant did not provide the definitions of the words in the challenged representation. Those relevant definitions undermine Defendant's position.

"Made" is the past participle of "make," which means "to produce something, often using a particular substance or material."[3] "From" is defined as "used to show the origin of something or someone" or "used to show the material of which something is made."[4] The adjectival phrase, "100 percent," is defined as "completely, entirely."[5] "Real" is defined as "existing in fact and not imaginary."[6] "Fruit" is defined as "the soft part containing seeds that is produced by a plant."[7]

Considering these definitions in context, Plaintiff's construction of the "MADE FROM 100% REAL FRUIT" advertisement represents the plain and ordinary meaning of those words when used together: The Applesauce is produced using entirely the nonimaginary soft part of plants containing seeds. Defendant's contention that the advertisement can only be interpreted by consumers in the opposite way is belied by the definitions of the words in that advertisement.

Defendant attempts to distinguish *Bell*, arguing that the advertisement in that case did not include "Made From" language, and the representation on the Applesauce labels. Def.'s Memo. in Supp. [Dkt. 20] at 13. Defendant thus claims that *Bell* does not address or overrule "the vast body of case law that holds that a statement that a food is 'made with' a certain ingredient does *not* mean that the food is made 'only with' that ingredient." *Id.* (emphasis original).

---

[3] *Made*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/made; *Make*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/make.
[4] *From*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/from.
[5] *100 percent*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/100%20percent#:~:text=Definition%20of%20100%20percent,agree%20with%20her%20100%20percent.
[6] *Real*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/real.
[7] *Fruit*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/fruit.

However, Defendant's attempt at semantics again fails because the Applesauce does not claim it is "made *with*" 100% real fruit, nor do Defendant's authorities hold, as a matter of law, that "made from" or "made with" representations are not deceptive as a matter of law.  *See infra* § III(E).  Finally, the important language to the panel in *Bell* in overruling the district court's dismissal was "100%," and Plaintiff's interpretation of the Applesauce labels is "certainly a plausible reading."  *See* 982 F.3d at 476-77, 481.

### E. There is no bright-line rule that "made from" or "made with" advertisements are not deceptive as a matter of law.

Citing *Weaver v. Champion Petfoods USA, Inc.* as support, Defendant suggests that there is some bright-line rule stating that a product labeled as having been "made from" or "made with" a particular ingredient cannot be deceptive as a matter of law if the product contains other ingredients.  *See* Def.'s Memo. in Supp. [Dkt. 20] at 8 (citing *Weaver*, 3 F.4th 927, 937 (7th Cir. 2021)).  No such bright-line rule exists, and *Weaver* undermines Defendant's entire argument.

The representation at issue in *Weaver* involved dog food labels claiming the food is "made with fresh regional ingredients" when it allegedly contained non-fresh and non-regional ingredients.  3 F.4th 936-37.  While the Seventh Circuit ultimately affirmed *summary judgment* against the plaintiff, *id.* at 939, *the district court denied the defendant's motion to dismiss* the plaintiff's ICFA claim based on his allegations that the dog food used non-fresh and non-regional ingredients.  *Weaver v. Champion Petfoods USA Inc.*, No. 18-CV-1996-JPS, 2019 WL 2774139, at *7 (E.D. Wis. July 1, 2019) ("In light of the foregoing . . . [Plaintiff's] claim will survive as to BPA, pentobarbital, and the alleged use of non-regional and non-fresh ingredients.").

The Seventh Circuit affirmed summary judgment against the *Weaver* plaintiff because he (1) offered *no evidence* that he purchased dog food containing pentobarbital, 3 F.4th at 936; (2) he *could not produce evidence* that reasonable consumers would be "materially misled by

9

Champion's representations that its food is made with fresh regional ingredients, *id.* at 938; and (3) he *offered no evidence* "apart from his own testimony that a reasonable consumer would be materially misled" by the fresh, regional ingredients representation. *Id.* at 939.

Here, Defendant cites *Weaver* in support of its claim that, "[n]umerous courts have repeatedly held that a 'reasonable consumer' understands that if a products is labeled as having been 'made from' or 'made with' a particular ingredient, that does not mean the product is made *only* from that ingredient." Def.'s Memo. in Supp. at 8. That is not the holding of *Weaver*. *Weaver* held that the plaintiff's failure to produce any evidence supporting his claim, aside from his own testimony, did not create a genuine issues of material fact "from which a jury could find that a reasonable consumer would be materially misled." *See id.* at 938.

Even more telling is Defendant's failure to cite or reconcile the portion of the *Weaver* opinion that is fatal to its Motion to Dismiss:

> Unlike in *Bell*, here Champion's packaging did not represent that it was made with 100% fresh regional ingredients. **But more importantly**, the result is different in this case because of the difference between a motion to dismiss on the pleadings and a motion for summary judgment . . . In *Bell*, to survive a motion to dismiss, the plaintiffs needed only to nudge their claims across the line from conceivable to plausible and present a claim to relief that was plausible on its face.

*Id.* (alteration, citations, and internal quotations omitted) (bold-italicized emphasis added). Defendant's reliance on *Weaver* is puzzling.

This case involves both a motion to dismiss on the pleadings and a "100%" representation, which the *Weaver* opinion noted would produce a different result compared to the court's denial of summary judgment in that case. In other words, *Weaver* says that the result the court reached (affirming summary judgment) in that case would have been different if the pleading before it was a motion to dismiss (i.e., denying motion to dismiss). But, of course, the district court in *Weaver*

10

had already denied the defendant's motion to dismiss and that decision was never brought before the Seventh Circuit in *Weaver*.

*Kennedy v. Mondelez Glob. LLC*, cited by Defendant and *Weaver*, is likewise inapposite to Defendant's position. *See* Def.'s Memo. in Supp. [Dkt. 20] at 8. In *Kennedy*, the plaintiff alleged that Nabisco's naming of graham crackers was deceptive because graham flower is not the predominate ingredient. No. 19-CV-302-ENV-SJB, 2020 WL 4006197, at *9 (E.D.N.Y. July 10, 2020). The court rejected the plaintiff's claims finding that it was not deceptive as a matter of law because "graham crackers" do not connote "graham flower." *Id.*

The *Kennedy* court relied on the Sixth Circuit's opinion in *Nashville Syrup Co. v. Coca Cola Co.*, where that court rejected the argument that the name "Coca Cola" implied to the public that the product is mainly or essentially coca leaves and cola nuts when it is not. *Id.* at *10 (citing *Nashville Syrup Co.*, 215 F. 527, 531 (6th Cir. 1914)). *Kennedy* or *Nashville Syrup* might support Defendant's position if Plaintiff had alleged that naming the product "applesauce" was deceptive because the primary ingredient is not apples. However, Defendant labeled the Applesauce as "MADE FROM 100% REAL FRUIT."

If the defendants in *Kennedy* made the representation, "MADE FROM 100% REAL GRAHAM," on their graham products, the outcome in *Kennedy* may have been different. If the defendants in *Nashville Syrup* labeled Coke products, "MADE FROM 100% REAL COCA LEAVES AND COLA NUTS," the result may have been different as well. However, those defendants did not make such representations. Mott's did, and those cases are inapposite.

### F. Plaintiff's breach of express warranty and unjust enrichment claims are well-pleaded.

Defendant argues that Counts II and III should be dismissed on the same grounds as Plaintiff's ICFA claim (Count I). As set forth above, Plaintiff adequately states a claim under the

ICFA. Defendant offers no independent grounds warranting dismissal of Counts II and III, and Defendant's motion should be denied in its entirety.

## IV. CONCLUSION

Plaintiff's proposed construction of the "MADE FROM 100% REAL FRUIT" representation is plausible. At the pleading stage, Plaintiff's allegations are accepted as true, not Defendant's alternative arguments set forth in a motion to dismiss. In any event, Defendant offers no argument supporting dismissal of Plaintiff's claims, with prejudice. Accordingly, Defendant's Motion to Dismiss [Dkt. 19] should be denied in its entirety.

Dated: December 8, 2021　　　　　Amber Schneider, individually and on behalf of other similarly-situated current citizens of Illinois and the United States, Plaintiffs

By:　/s/ David C. Nelson
　　　David C. Nelson (ARDC 6225722)
　　　NELSON & NELSON, ATTORNEYS AT LAW, P.C.
　　　420 North High Street, P.O. Box Y
　　　Belleville, IL 62222
　　　Tel:　618-277-4000
　　　Email: dnelson@nelsonlawpc.com

　　　Matthew H. Armstrong (ARDC 6226591)
　　　ARMSTRONG LAW FIRM LLC
　　　8816 Manchester Rd., No. 109
　　　St. Louis, MO 63144
　　　Tel:　314-258-0212
　　　Email: matt@mattarmstronglaw.com

　　　Stuart L. Cochran (ARDC 6323231)
　　　Blake E. Mattingly (ARDC 6338438)
　　　Steckler Wayne Cochran Cherry PLLC
　　　12720 Hillcrest Rd., Ste. 1045
　　　Dallas, TX 75230
　　　Tel:　972-387-4040
　　　Email: stuart@swclaw.com
　　　Email: blake@swclaw.com

　　　*Attorneys for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which electronically delivered a copy of the same to all counsel of record.

*/s/ David C. Nelson*
David C. Nelson