IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **AMBER SCHNEIDER, individually and on behalf of all similarly-situated individuals,**<br><br>             **Plaintiff,**<br><br>**v.**<br><br>**MOTT'S LLP,**<br><br>             **Defendant.** | Case No. 3:21-CV-1251-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Applesauce: the classic lunchbox staple and an easy snack for parents looking to appease hungry toddlers. But what exactly is it made of? In its purest form, applesauce consists of only puréed, cooked apples.[1] It also may contain added sugar, other fruits, spices like cinnamon, nutmeg, or allspice, and Vitamin C in the form of ascorbic acid.[2]

Plaintiff Amber Schneider believed she was purchasing that most basic form of applesauce when she purchased applesauce manufactured and sold by Mott's LLP. (Doc. 1-1). That's because the label said: "Made From 100% Real Fruit." In actuality, Mott's Applesauce contains not only apples, but also high fructose corn syrup and ascorbic acid. As a result, Schneider filed a Class Action Complaint alleging that Mott's label is deceptive under the Illinois Consumer Fraud and Deceptive Business Practices

---

[1] "Health Benefits of Applesauce," WebMD, https://www.webmd.com/diet/health-benefits-applesauce#:~:text=Applesauce%2C%20in%20its%20simplest%20form,%2C%20water%2C%20and%20ascorbic%20acid. (last visited Sept. 15, 2022).
[2] *Id.*

Act ("ICFA"). She also alleges Mott's breached its express warranty with consumers and that Mott's been unjustly enriched as a result of its deceptive conduct.

Mott's now moves to dismiss the Class Action Complaint because no reasonable consumer would believe applesauce is made only from apples. (Doc. 20). Schneider responded in opposition (Doc. 25), and Mott's filed a reply brief (Doc. 26), as well as a statement of supplemental authority (Doc. 30). For the reasons set forth below, the Court grants in part and denies in part Mott's motion to dismiss.

## FACTUAL BACKGROUND

Mott's Applesauce comes in a variety of flavors: Cinnamon, Pear, Tropical, Strawberry, Mixed Berry, Mango Peach, and, of course, Apple. (Doc. 1-1 at ¶ 1). On the packaging for each of these flavors, Mott's includes a picture of the fruit contained in that variety.[3] (Doc. 21-1). For most varieties, the picture of the apple has a small "sticker" on it that says, "Made From 100% Real Fruit." (*Id.*). The Pear flavor has the sticker on a pear, the Tropical flavor has the sticker on an orange, and the Mango Peach flavor has the sticker on a peach. (*Id.*). For example:



---

[3] Mott's asks the Court to take judicial notice of its product labels. (Doc. 21). Plaintiff does not oppose the request, and a court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Accordingly, the Court will take judicial notice of the labels.



Schneider alleges the "Made from 100% Real Fruit" representation is deceptive because it leads consumers to believe that Mott's Applesauce does not contain ingredients in addition to apples or other fruit. (Doc. 1-1 at ¶ 2). The Applesauce, however, also contains high fructose corn syrup as a sweetener and ascorbic acid as a preservative. (*Id.* at ¶ 27). Thus, Schneider alleges, the "Made from 100% Real Fruit" label is unfair, false, deceptive, and misleading because it misstates the ingredients in the Applesauce. (*Id.* at ¶¶ 10, 22).

Schneider further claims that reasonable consumers rely on the truth and accuracy of food product labeling, including information about the ingredients, in making their purchasing decisions. (*Id.* at ¶¶ 24-25). Thus, the "Made From 100% Real Fruit" label is something a reasonable consumer would be expected to rely on in deciding whether to purchase Mott's Applesauce. (*Id.* at ¶ 26). Because Mott's Applesauce is actually made with high fructose corn syrup, a highly industrialized food-grade sweetener, and ascorbic acid, a commercially manufactured food additive used in processed foods, it is worth less than the product as represented. (*Id.* at ¶¶ 4, 6, 49). Consumers thus paid a price premium they would not have paid absent Mott's misrepresentations, and consumers did not receive the benefit of their bargain. (*Id.* at ¶ 49). Schneider claims Mott's intended for

consumers to rely on its false label, and that its misrepresentation is material because it conveys false information that reasonable consumers would rely upon when deciding whether to purchase the product. (*Id.* at ¶ 50).

Schneider filed this putative class action lawsuit in the Circuit Court of St. Clair County, Illinois, on behalf of two proposed classes: an "Illinois Class" and a "Nationwide Class." (*Id.* at ¶ 36). The classes consist of all citizens who purchased Mott's Applesauce, or one of the fruit varieties, in the three years preceding the filing of the Complaint. (*Id.*). In Count I, on behalf of Illinois consumers, Schneider alleges Mott's deceptive and unfair practices violate the IFCA. (Doc. 1-1). In Counts II and III, on behalf of all U.S. consumers, Schneider claims Mott's breached its express warranty that its Applesauce is "Made From 100% Real Fruit" by providing consumers with a product containing non-fruit ingredients, and that Mott's has been unjustly enriched as a result of its actions. (*Id.*). As relief, Schneider requests compensatory damages, statutory and punitive damages, injunctive relief, pre- and post-judgment interest, and attorneys' fees and costs.

## SUBJECT MATTER JURISDICTION

On October 12, 2021, Mott's removed this case from the Circuit Court of St. Clair County, Illinois, to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (Doc. 1). Under CAFA, a federal court has subject matter jurisdiction if (1) the proposed class has at least 100 members; (2) there is minimal diversity of citizenship between the parties; and (3) based on the complaint's allegations, the amount in controversy exceeds $5,000,000. *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 853 (7th Cir. 2022) (citing 28 U.S.C. § 1332(d)).

Here, Schneider has alleged that the proposed classes consist of thousands of purchasers. (Doc. 1-1 at ¶ 39). Furthermore, there is minimal diversity of citizenship. Schneider is an Illinois citizen, while Mott's is a Delaware limited liability partnership with its principal place of business in Texas. (*Id.* at ¶ 14). With respect to the amount in controversy, however, Schneider alleges that the $5,000,000 minimum threshold cannot be met because the total value of her individual claim is, at most, equal to the refund of the purchase price she paid. And because the value of her claim is typical of all class members, the total damages is far less than $5,000,000.

The Court is convinced otherwise. "To satisfy the amount-in-controversy requirement, a removing defendant may rely on the complaint's allegations, the plaintiff's informal estimates, affidavits from employees or experts, or other sources." *Schutte*, 28 F.4th at 854 (citation omitted). "Once the removing party meets its burden, the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Id.* Schneider seeks up to a complete refund of the purchase price paid for herself and thousands of class member across the United States. As Mott's argues, it potentially could be on the hook for actual damages equal to its total retail sales over the three-year class period. (Doc. 1). Mott's has provided evidence that its total retail sales were well over $5 million during that time. (*Id.*). Mott's also notes that Schneider seeks punitive damages under the ICFA, which the Court must consider in determining whether the jurisdictional amount is satisfied. (*Id.*).

Because the preponderance of the evidence demonstrates there are more than 100 proposed class members, there is minimal diversity of citizenship, and the amount in

controversy exceeds $5,000,000, the Court is satisfied that federal subject matter jurisdiction is proper under CAFA.

## LEGAL STANDARD

Turning to the instant motion, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (internal citations omitted).

## DISCUSSION

### I. Illinois Consumer Fraud Act

To state a claim under the ICFA, a plaintiff must plead facts demonstrating: (1) the defendant committed a deceptive or unfair act; (2) with the intent that others rely on the deception; (3) that the act occurred in the course of trade or commerce; and (4) that it caused actual damages. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)). "If the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil

Procedure] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Id.* That is, the plaintiff must identify the "who, what, when, where, and how" of the alleged fraud. *Id.*

### A. The Reasonable Consumer Standard

Courts apply a "reasonable consumer" standard when evaluating whether a label is deceptive or has the likelihood to deceive. *Id.* Under this standard, a plaintiff must prove that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the label. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020).

When evaluating a motion to dismiss, the Seventh Circuit has held that a plaintiff's claims will survive "if they have plausibly alleged that the defendants' front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." *Id.* at 476. How consumers actually understand defendants' labels "may not be answered as a matter of law simply because lawyers can construe an ambiguous claim in a way that would not be deceptive. Plaintiffs are entitled to present evidence on how consumers actually understand these labels." *Id.* at 480.

In *Bell*, the plaintiffs alleged that the phrase "100% Grated Parmesan Cheese" on the defendant's labels was deceptive because the products contained ingredients other than cheese. *Id.* at 473. The district court dismissed the plaintiffs' claims for two reasons. First, even if the front label was ambiguous, a consumer seeking clarity could read the ingredient list on the back. *Id.* at 475. Second, a reasonable consumer would use common sense to determine that, despite the 100% claims, the cheese products must contain added

ingredients considering they are sold in an unrefrigerated section of the grocery store. *Id.*

In reversing the district court's dismissal of the case, the Seventh Circuit noted that while all information available to consumers and the context provided by the full product packaging is relevant, "an accurate fine-print list of ingredients does not foreclose as a *matter of law* a claim that an ambiguous front label deceives reasonable consumers." *Id.* at 476 (emphasis added). And the label there was ambiguous: a reasonable consumer could believe the phrase "100% Grated Parmesan Cheese" meant the cheese was 100% grated, 100% parmesan, or that that the 100% applies to all three words. *Id.* at 476-77.

The *Bell* court further observed that the law does not impose on average consumers an obligation to question a label and parse it for ambiguities, "especially in the seconds usually spent picking a low-cost product." *Id.* (citing *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019) ("[A] parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures. . . . Nor does the law expect this of the reasonable consumer.")). On the other hand, the court observed, "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Id.* at 477 (collecting cases).

### B. Could Reasonable Consumers Be Misled by Mott's Labels?

Mott's first argues that Schneider's interpretation of its Applesauce labels is unreasonable or fanciful, as no reasonable consumer would believe its Applesauce is made only from apples. The plain meaning of "Made From 100% Real Fruit," it argues,

is that the Applesauce contains fruit as an ingredient, and that the fruit used is 100% real. Mott's asserts that Schneider's alternative reading of the label, "Made From [Only] 100% Real Fruit" inserts a word that is not there, disregards the words "Made From," and ultimately fails to "take into account all the information available to consumers and the context in which that information is provided and used." *Id.* This context, according to Mott's, includes its disclaimer that its Applesauce is "Made from real fruit which may contain seeds, stems or other pieces of natural fruit," as well as the ingredient lists for the products, which disclose that they contain a sweetener and ascorbic acid. Thus, Mott's argues, it is implausible that its labels would mislead consumers.

The Court disagrees. First, as noted above, the Seventh Circuit in *Bell* expressly rejected the so-called "ingredients-list defense." *Id.* at 480. Second, while Mott's cites to a plethora of cases where courts have found that a "reasonable consumer" understands a product "made from" or "made with" does not mean the product is made *only* from that ingredient, most of those cases do not involve labels claiming to be made from 100% of an ingredient. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 932 (7th Cir. 2021) (holding that "made with fresh, regional ingredients" is not misleading); *Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205 (PJS/KMM), 2020 WL 7624861, at *7 (D. Minn. Dec. 22, 2020), *aff'd*, 27 F.4th 1339 (8th Cir. 2022) ("[T]he statement that a bag of dog food contains "fresh regional ingredients does not imply that it is composed *exclusively* of ingredients that are fresh and regional."); *Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *4 (E.D.N.Y. July 10, 2020) (holding that "made with fresh honey" is not misleading); *Henderson v. Gruma Corp.*, No. CV 10-04173 AHM AJWX, 2011 WL

1362188, at *12 (C.D. Cal. Apr. 11, 2011) ("The phrase 'With Garden Vegetables' . . . does not claim a specific amount of vegetables in the product, but rather speaks to their presence in the product, which is not misleading."); *Reyes v. Crystal Farms Refrigerated Distribution Co.*, No. 18CV2250NGGRML, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) ("made with real butter" was not misleading because product contains butter); *Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. CV1701875MWFMRWX, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) ("made with real fruit and vegetable juice" was not misleading when fruit snacks were made with fruit and vegetable juice).

The only cases cited by Mott's that involve 100% claims are inapposite. In *Sarr v. BEF Foods, Inc.*, the label for Bob Evans' Mashed Potatoes included the statement: "Made with 100% Fresh Potatoes." 2020 WL 729883, at *1 (E.D.N.Y. Feb. 13, 2020). The plaintiffs did not claim to believe, however, that the product was made with 100% potatoes. Instead, they claimed the product was misleading because it was not 100% fresh, *i.e.*, unprocessed. *Id.* at *2. In *Bruton v. Gerber Products Company*, the plaintiff asserted Gerber's baby food labels were deceptive when they said the products were "Made with 100% Natural Fruit" despite containing citric or ascorbic acid. 961 F. Supp. 2d 1062 (N.D. Cal. 2013), *rev'd and remanded on other grounds*, 703 F. App'x 468 (9th Cir. 2017). That case centered around the plaintiff's expectation that the product's ingredients were entirely "natural" as that term is defined by the federal government and its agencies, as well as the common definition of the word "natural." *Id.* at 1097-98. Neither court addressed a claim that the products were made 100% from a certain ingredient. Thus, these cases are not helpful to Mott's.

Furthermore, this is not a case involving an inherently unreasonable or fanciful interpretation of a label. *See, e.g.*, *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("Made with Real Vegetables" label on box of crackers could not reasonably mean crackers were "composed of primarily fresh vegetables"). In the Class Action Complaint, Schneider alleges that she purchased Mott's Applesauce after reviewing the packaging and seeing that it said: "Made From 100% Real Fruit." (Doc. 1-1 at ¶ 13). This representation led Schneider to believe the Applesauce is, literally, made from 100% real fruit—that is, it contains no ingredients other than fruit. (*Id.* at ¶ 2).

Contrary to Mott's argument, this is an extremely reasonable interpretation of Mott's label. Under *Bell*, Schneider was not required to question the label and parse it for ambiguities in the short of amount of time one spends choosing applesauce—perhaps, in fact, with small children in tow. Because reasonable consumers could be misled by Mott's label, the Court will not dismiss the Complaint on this basis.

### C. Is "Made From 100% Real Fruit" Ambiguous to Reasonable Consumers?

Mott's next argues that the claim "Made From 100% Real Fruit" truthfully and unambiguously reflects that its Applesauce has "100% Real Fruit" as an ingredient. Mott's also asserts that, even if the language is ambiguous under *Bell*, that case did not overrule the "vast body" of case law holding that a label indicating a food is "made with" a certain ingredient does not mean the food is made "only with" that ingredient. Mott's cites to *Weaver v. Champion Pet Foods*, 3 F.4th 927 (7th Cir. 2021), in which the Seventh Circuit "cited with approval" four district court cases holding that a reference to a food "made with" a certain ingredient does not mean that was the food's only ingredient.

The Court disagrees that Mott's label is unambiguous. As in *Bell*, Mott's label could be interpreted more than one way. A reasonable consumer could read the label to mean that the fruit in the Applesauce is 100% real, or that the Applesauce is made 100% from real fruit. It is also plausible that 100% applies to both words: the Applesauce is made from 100% fruit that is 100% real. Of course, how consumers actually perceive and interpret Mott's claim that its Applesauce is "Made From 100% Real Fruit" is an issue of fact, "subject to proof that can be tested at trial." *Bell*, 982 F.3d at 481.

The Court also is unpersuaded by Mott's reference to *Weaver*. To begin, neither *Weaver* nor the district court cases it cited involved a label with a 100% claim. *Id.* at 938 ("Unlike in *Bell*, here Champion's packaging did not represent that it was made with 100% fresh regional ingredients."). Second, the *Weaver* court did not announce a bright-line rule regarding labels using "made with" language. Even if it had, Mott's label does not use the words "made with," it uses "made from." The Court finds this to be a subtle but important difference. While "made with" implies 100% real fruit is a component of the Applesauce *along with other ingredients*, "made from" implies the Applesauce is composed of 100% real fruit *and nothing else*.[4] Thus, a reasonable consumer could believe that Mott's label indicates its Applesauce is made entirely from apples.[5]

---

[4] "With" is a preposition "used to show what is on or in something." *With*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/with (last visited Sept. 15, 2022). "From" is a preposition "used to show the origin of something" or "the material of which something is made. *From*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/from (last visited Sept. 15, 2022).

[5] In a Statement of Supplemental Authority (Doc. 30), Mott's also points the Court to *Song v. Champion Petfoods USA, Inc.*, 27 F.4th 1339 (8th Cir. 2022), in which the Eighth Circuit reaffirmed that the entire label is relevant to the interpretation of the contested claim. Mott's asserts that the additional language on its label—that its Applesauce "may contain seeds, stems or other pieces of natural fruit"—is qualifying language that explains the 100% real fruit representation. Again, the Court disagrees. A reasonable consumer could read that qualifying language to mean that Mott's uses whole apples in the production of

Finally, as relevant here, *Weaver* highlighted the difference between a motion to dismiss on the pleadings, where plaintiffs need only "nudge[ ] their claims across the line from conceivable to plausible," and a motion for summary judgment, where plaintiffs must provide sufficient evidence from which a jury could find that a reasonable consumer would be misled by a label. *Id.* Here, Schneider has plausibly alleged that Mott's label would mislead a significant portion of reasonable consumers. Accordingly, the Court denies Mott's motion on these grounds.

### D. Do Dictionary Definitions of Applesauce and FDA Regulations Resolve the Ambiguity?

Lastly, Mott's argues that dictionaries define "applesauce" as a food made with apples that are sweetened. Therefore, Schneider's claimed surprise that Mott's Applesauce contains other ingredients such as sweeteners is contrary to a reasonable consumer's understanding of what constitutes applesauce.[6] Yet, only two of the definitions cited by Mott's actually describe applesauce as sweetened or made with sugar. The other three definitions provided by Mott's describe applesauce as "typically sweetened," "sometimes sweetened," and "a sweet food made from cooked apples." Considering that the definition of applesauce itself is inconsistent across dictionaries, it is not unreasonable for a consumer to be unsure whether a particular applesauce contains ingredients other than apples. Additionally, even if a "reasonable consumer" enters the transaction with the knowledge that applesauce is generally sweetened, that same

---

its Applesauce, while still believing that no other ingredients are used based on Mott's "Made From 100% Real Fruit" representation.

[6] Mott's argument is contradicted by the fact that it offers a No Sugar Added Applesauce, which contains only apples and ascorbic acid as ingredients.

"reasonable consumer" could believe "Made From 100% Real Fruit" means this particular applesauce does *not* contain sugar or any other ingredient.

Mott's also refers to FDA regulations, which has a "standard of identity" for applesauce. According to Mott's, the FDA allows foods labeled as applesauce to contain both sweeteners and Vitamin C as optional ingredients. Echoing the court in *Bell*, the undersigned has "no quarrel" with Mott's ability to call its product "applesauce." *Bell*, 982 F.3d at 481. "The problem lies in the '100%' . . . ." *Id.* And, as in *Bell*, it is unreasonable to believe the average consumer is aware of the FDA regulations defining applesauce. Nor is that definition even relevant to whether a consumer would reasonably believe the product is made from 100% fruit, considering sweeteners and Vitamin C are optional under the FDA's regulation. This argument also fails.

In sum, Schneider has plausibly alleged that a majority of reasonable consumers would be misled by Mott's claim that its Applesauce is "Made From 100% Real Fruit," a statement the Court finds to be ambiguous. And her interpretation of Mott's representation—that Mott's Applesauce is made entirely from real fruit with no added ingredients—is not fanciful or irrational. Because Schneider is entitled to present evidence on how consumers actually understand Mott's label, the Court will allow her ICFA claim to proceed. Additionally, because Mott's arguments for dismissal of Schneider's breach of warranty and unjust enrichment claims depend on the dismissal of her ICFA claim, those counts shall also proceed.

## II.     Injunctive Relief

Finally, Mott's argues Schneider's request for injunctive relief should be dismissed

for lack of standing because she fails to allege future harm. To state a claim for injunctive relief, a plaintiff must allege that a defendant's conduct is likely to cause her harm in the future. *Camasta v. Jos. A. Bank Clothiers Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). The threat of future harm must be real and immediate. *Jett v. Warrantech Corp.*, 436 F. Supp. 3d 1170, 1177 (S.D. Ill. 2020). Because Schneider is now aware that Mott's Applesauce is not made solely from apples, she is not likely to be harmed by the alleged misrepresentation in the future. *See Rudy v. Fam. Dollar Stores, Inc.*, No. 21-CV-3575, 2022 WL 345081, at *10 (N.D. Ill. Feb. 4, 2022) (dismissing claim for injunctive relief where plaintiff was aware that "Smoked Almonds" were flavored using natural smoke flavor, not an open fire, and therefore was unlikely to be harmed by the alleged deception in the future). Accordingly, the Court agrees that injunctive relief is unavailable to Schneider.

## Conclusion

For these reasons, the Court **GRANTS in part and DENIES in part** the Motion to Dismiss filed by Defendant Mott's LLP (Doc. 20). The Court **GRANTS** Mott's motion as to Plaintiff Amber Schneider's claim for injunctive relief. The Court **DENIES** Mott's motion with regard to Schneider's ICFA, breach of express warranty, and unjust enrichment claims.

This matter will be set for a scheduling conference by separate order.

**IT IS SO ORDERED.**

DATED: September 19, 2022

_Nancy J. Rosenstengel_
_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**